*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LIZA MICHELLE BARNETT, LPN.

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

UNPUBLISHED
September 19, 2024

Petitioner-Appellee,

v

No. 366948
LARA Bureau of Professional
Licensing
LC No. 20-023817

LIZA MICHELLE BARNETT, LPN,

Respondent-Appellant.

Before: PATEL, P.J., and YATES and SHAPIRO,* JJ.

PER CURIAM.

Respondent, Liza Michelle Barnett, LPN, appeals by right the order of the Board of Nursing Disciplinary Subcommittee[1] (the Subcommittee) placing respondent on probation for one to three years and fining her $500 for violations of MCL 333.16221(a) (negligence or failure to exercise due care) and (b)(*i*) (incompetence). For the reasons stated in this opinion, we vacate and remand for elaboration by the Subcommittee with respect to its ruling.

## I. FACTUAL BACKGROUND

On Wednesday, October 11, 2017, a nurse realized that the dressings of a patient in a nursing and rehabilitative care facility had not been changed since Sunday, October 8, 2017,

---

[1] The Board of Nursing Disciplinary Subcommittee is an entity within the Department of Licensing and Regulatory Affairs (LARA), Bureau of Professional Licensing.

---

*Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

-1-

despite a physician's order requiring nurses to change the patient's dressings every Monday, Wednesday, and Friday. Further, the dressings were marked as having been changed on October 9 and 10, 2017, in the patient's electronic medical record, which is maintained in an electronic system known as PointClickCare (PCC). The nurse who made the discovery spoke with her supervisor, who examined the patient's records and determined that respondent was responsible for changing the dressings on those two dates. The supervisor also determined that respondent had documented changing wound dressings on a second patient when she had not actually completed the dressing changes. On October 14, 2017, before respondent's next scheduled shift and a scheduled meeting with the facility's director of nursing to discuss an investigation of the matter, respondent made late entries in both patients' records. In the late entries, respondent documented that both patients had refused dressing changes.

Respondent admitted to the director of nursing and an investigator with the Bureau of Professional Licensing that she did not change either patient's dressings. Respondent maintained, however, that both patients refused treatment and that the PCC entries showing that treatment was performed were made unintentionally and accidently. She further explained that when the patients refused the dressing changes, she promptly advised the director of nursing and two oncoming shift nurses. And she insisted that she had not been adequately and properly trained on using PCC, that no co-workers were available to assist her in making the correct PCC entries when the patients refused treatment, and that the 24-hour book—a physical book used by staff to communicate with each other—was missing so written notations could not be made about the dressings.[2] She also explained that the error was the result of "chaos" in the facility caused in part by ongoing construction, the presence of state nursing-home surveyors, and staffing shortages. Respondent additionally claimed that on October 14, 2017, she entered the facility to complete her continuing education requirements, at which time she used a nurse's laptop to make late or supplemental entries into the records of the two patients documenting their refusals to allow dressings to be changed on October 9 and 10, 2017. Respondent did not believe that the changes reflected a falsification of the record as she was simply correcting an innocent mistake.[3]

Petitioner, LARA, presented evidence that respondent had been adequately trained on using PCC, that respondent was able to correctly use the system at the end of her training, and that the proper course of action when information is erroneously inputted into PCC is to then strike the error and enter the correct information. Further, petitioner submitted testimony from the director of nursing that she did not recall having been advised by respondent that the dressings had not been changed or that the entry she had made was inaccurate. Petitioner also introduced testimony from several witnesses that there were no known issues regarding the availability of the 24-hour

---

[2] Respondent explained that when the patients refused treatment, she "X'd" her progress in the PCC charts, thinking that doing so would reflect that treatment had not been completed and was still due, which could be seen by and alert the nurse on the next shift. Respondent testified that she did not know how to enter the treatment refusals into PCC, as she had not been trained on such entries.

[3] Based on these events, respondent was criminally charged with falsifying medical records. She was acquitted following trial.

book at the time in question, that there had been no construction specifically impacting the nursing station, and that there were no state surveyors at the facility on October 9 and 10, 2017. The director of nursing claimed that when confronted, respondent told the director that she "forgot" to change the wound dressings.[4] Petitioner presented the testimony of an expert in the field of nursing who opined that respondent's conduct constituted negligence, a failure to exercise due care, and incompetence.

Petitioner filed an administrative complaint against respondent under MCL 333.16221(a), (b)(*i*), and (b)(*vi*) (lack of good moral character).[5] After a full evidentiary hearing, the administrative law judge (ALJ) issued a detailed proposal for decision (PFD) recommending that the Subcommittee conclude that respondent had not violated MCL 333.16221(a), (b)(*i*), or (b)(*vi*), and order that petitioner's complaint be dismissed with prejudice. The ALJ found by a preponderance of the evidence that respondent credibly testified that the facility never formally instructed her on how to properly use PCC. The ALJ further determined that the evidence revealed that respondent was not comfortable navigating PCC because she was taught to use the system by experienced nurses who each charted differently.

The ALJ found credible respondent's testimony regarding her training with PCC, her lack of ability to navigate PCC, her unsuccessful attempts to find assistance from co-workers in relation to the two patients, the location of the 24-hour book, and her accidental entries into PCC that she had changed the patients' dressings. The ALJ also found credible respondent's testimony concerning construction at the facility, the facility's transition from paper records to electronic records, and the chaotic atmosphere at the facility. And critically, the ALJ believed respondent's testimony that she promptly notified the director of nursing about the patients' refusals to be treated. The ALJ additionally determined that respondent's testimony about construction at the facility and the frequent refusal of treatment by one of the patients was corroborated by testimony in respondent's criminal trial. The ALJ also found that staffing concerns at the facility were "persistent and ongoing" during the dates at issue, noting that staff members caring for 34 patients might commit unintentional or understandable errors. The ALJ observed that petitioner "presented

---

[4] There was no evidence specifically demonstrating that the two patients actually refused or did not refuse care concerning the dressings, but there was evidence that the patients had the capacity or ability to indicate that treatment was being refused.

[5] MCL 333.16221(a) provides the following ground for discipline:

> *Except as otherwise specifically provided in this section, a violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may impair, the ability to safely and skillfully engage in the practice of the health profession.*

MCL 333.16221(b)(*i*) simply indicates that "[i]ncompetence" is a ground for discipline.

no contrary evidence" other than the testimony of its expert, which the ALJ found to be unpersuasive. The ALJ reasoned and concluded:

> While [the expert's] testimony would be persuasive had Respondent definitively engaged in such [mis]conduct, here, the evidence directs an opposite conclusion. [The expert] conceded that some individuals are more competent than others at using PointClickCare and conceded that if Respondent requested assistance from another nurse who also did not understand the system, then Respondent would be misinformed by the other individual on how to use the system. [The expert] also conceded that [the facility] had no specific policy mandating that late entries be made within 24-48 hours of the original entry. Given [her] concessions, the tribunal finds it entirely possible that Respondent committed errors using PointClickCare to initially enter [the patients'] treatment on October 9-10, 2017, and then corrected those errors through the October 14, 2017, late entries. In the tribunal's view, simple, expected errors do not constitute negligence, incompetence, or a lack of good moral character.

The ALJ concluded that it was quite possible that respondent committed errors using PCC and returned to correct them, which did not constitute negligence, incompetence, or lack of good moral character. The ALJ determined that the facility was under significant construction, that patient files were stored in a disorganized manner, that "staffing deficiencies were persistent and ongoing" on October 9 and 10, 2017, that the surrounding circumstances constituted a reasonable explanation for why respondent could not document that the patients refused treatment, and that respondent told the director of nursing and other nurses about the refusals. The ALJ issued the PFD consistent with his findings of fact and conclusions of law.

Petitioner filed exceptions to the PFD, and respondent filed a response to the exceptions. Subsequently, the Subcommittee entered an order with respect to the findings of fact and conclusions of law, in which it accepted in part and rejected in part the findings of fact and conclusions of law identified in the PFD. The Subcommittee accepted the findings of fact to the extent that they constituted "a reiteration and summary of the testimony and evidence presented at the administrative hearing." The Subcommittee adopted the ALJ's findings of fact and accepted the ALJ's conclusion of law with respect to the disciplinary action brought under MCL 333.16221(b)(*vi*). But the Subcommittee rejected the ALJ's conclusions of law that petitioner had failed to prove by a preponderance of evidence that respondent was subject to disciplinary action under MCL 333.16221(a) and (b)(*i*). The Subcommittee stated that respondent documented that she changed wound dressings without actually performing the treatment and then made late entries claiming that the patient[6] refused to allow her to change the dressings.

The Subcommittee next addressed the testimony of petitioner's expert witness and then reached its conclusion:

> [The expert] testified that the standard of care requires that physician orders be followed and, if a patient refuses wound treatment, the standard of care requires

---

[6] The Subcommittee only addressed respondent's conduct in relation to one of the patients.

the nurse to document the refusal and with a plan of action. [The expert] further testified that the standard of care and minimal standard of acceptable practice requires accurate and timely documentation of treatment.

In [the] expert['s] opinion, Respondent violated the standard of care and demonstrated incompetence by documenting that she had changed [a patient's] wound dressings before any treatment had been performed. Additionally, Respondent's late entry that occurred five days after the original entry, which made a change to detail [the patient's] treatment refusals, presented a delay in [his] care because other providers had no idea that [the] wound dressing had not been changed. [The expert] explained that if the patient had refused treatment, then Respondent's failure to timely document the refusal and a plan of action are violations of the minimal standard of practice.

Based on the evidence in the record, and in conjunction with the personal experience and expertise of the [Subcommittee] members, the [Subcommittee] finds that [the] expert['s] opinion correctly concludes that Respondent violated the standard of care by documenting patient treatment before any treatment was provided and that Respondent failed to meet the minimal standards of acceptable practice by failing to timely document [the patient's] refusal, thereby allowing the patient record to inaccurately reflect that [his] wounds had been treated for five days. [Record citations omitted.]

Later, the Subcommittee issued a final order placing respondent on probation for one to three years, fining her $500, and ordering her to pay costs for the statutory violations. Respondent moved for rehearing or reconsideration, which was denied by the Subcommittee for failure to demonstrate a material error.

## II. ANALYSIS

On appeal, respondent argues that there was a lack of competent, material, and substantial evidence supporting the Subcommittee's decision to punish her given the absence of evidence in the record demonstrating that respondent was negligent or incompetent. Respondent also contends that the record supports the ALJ's conclusion that petitioner's expert witness was discredited.

## A. STANDARDS OF REVIEW

"Rulings by disciplinary boards or subcommittees are reviewed on appeal solely under Const 1963, art 6, § 28." *In re Sangster*, 340 Mich App 60, 66; 985 NW2d 245 (2022); see also *Dep't of Community Health v Anderson*, 299 Mich App 591, 597; 830 NW2d 814 (2013); *Dep't of Community Health v Risch*, 274 Mich App 365, 371; 733 NW2d 403 (2007). Const 1963, art 6, § 28 provides, in pertinent part:

All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are

authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record.

"This Court must review the entire record, not just the portions that support an agency's findings, when assessing whether the agency's decision was supported by competent, material, and substantial evidence on the whole record." *Sangster*, 340 Mich App at 67. "Substantial evidence" is defined as evidence that a reasonable person would find acceptably sufficient to support a particular conclusion. *Id*. "This may be substantially less than a preponderance of evidence, but does require more than a scintilla of evidence." *Id*.

> Moreover, if the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence. A reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by evidence on the record or because the court might have reached a different result. [*Risch*, 274 Mich App at 372-373 (citations omitted).]

"Under th[e] test, it does not matter that the contrary position is supported by more evidence, that is, which way the evidence preponderates, but only whether the position adopted by the agency is supported by evidence from which legitimate and supportable inferences were drawn." *McBride v Pontiac Sch Dist (On Remand)*, 218 Mich App 113, 123; 553 NW2d 646 (1996). In general, we must defer to an agency's administrative expertise. *Sangster*, 340 Mich App at 67. "For purposes of Const 1963, art 6, § 28, a decision is not 'authorized by law' when it is in violation of a statute or a constitutional provision, in excess of an agency's statutory authority or jurisdiction, made upon unlawful procedure that results in material prejudice, or when it is arbitrary and capricious." *Id*. at 67-68 (citation omitted).

## B. DISCUSSION AND RESOLUTION

MCL 333.16237(4) addresses the role of disciplinary subcommittees in reviewing an ALJ's[7] recommended findings of fact and conclusions of law:

> If a disciplinary subcommittee finds that a preponderance of the evidence supports the recommended findings of fact and conclusions of law of the hearings examiner indicating that grounds exist for disciplinary action, the disciplinary subcommittee shall impose an appropriate sanction . . . . If the disciplinary subcommittee finds that a preponderance of the evidence does not support the findings of fact and conclusions of law of the hearings examiner indicating that grounds exist for disciplinary action, the disciplinary subcommittee shall dismiss

---

[7] ALJs are also referred to as hearings examiners.

the complaint. A disciplinary subcommittee shall report final action taken by it in writing to the appropriate board or task force.[8]

In this case, respondent essentially argues that the Subcommittee's decision was not supported by competent, material, and substantial evidence on the whole record because: the patients refused treatment; respondent inadvertently or accidentally entered information into the PCC showing that the wound dressings were changed; respondent had not been adequately and properly trained on using PCC; no co-workers were available to assist her in making the correct PCC entries after the patients refused treatment; respondent informed the director of nursing and oncoming shift nurses that she did not change the dressings; the 24-hour book was missing so written notations could not be made about the dressings; the unintentional error was the result of "chaos" and significant understaffing in the facility; and respondent made an appropriate correction in the PCC system. According to respondent, under these circumstances, there was inadequate evidence to demonstrate that she acted negligently, that she failed to exercise due care, or that she was incompetent. Respondent emphasizes that the ALJ found her to be credible with regard to all the evidentiary points relied on by respondent.

---

[8] In *Sangster*, 340 Mich App at 69, this Court explained:

> MCL 333.16231 authorizes the issuance of a complaint against a licensee for an alleged violation of MCL 333.16221. And MCL 333.16231a provides for a hearing on the complaint before a hearings examiner. At the hearing, the licensee "may be represented . . . by legal counsel." MCL 333.16231a(4). The hearings examiner "shall determine if there are grounds for disciplinary action under section 16221 . . . ." MCL 333.16231a(2). The hearings examiner must "prepare recommended findings of fact and conclusions of law for transmittal to the appropriate disciplinary subcommittee." Id. "In imposing a penalty . . ., a disciplinary subcommittee shall review the recommended findings of fact and conclusions of law of the hearings examiner." MCL 333.16237(1). Under MCL 333.16237(3), "[i]n reviewing the recommended findings of fact and conclusions of law of the hearings examiner and the record of the hearing, a disciplinary subcommittee may request the hearings examiner to take additional testimony or evidence on a specific issue or may revise the recommended findings of fact and conclusions of law as determined necessary by the disciplinary subcommittee, or both." A disciplinary subcommittee is not permitted to conduct its own investigation or to take its own additional testimony or evidence. Id. [Ellipses in original.]

We begin with some observations regarding credibility assessments. In *Anderson*, 299 Mich App at 599-600, this Court confronted an argument that a subcommittee must abide by an ALJ's evaluation of witness credibility:

> Respondent's main argument is that the disciplinary subcommittee should have believed her testimony as the hearing officer apparently did. But as the statute clearly provides, the disciplinary subcommittee is not bound by the recommended findings of the hearing officer. See MCL 333.16237(4) (vesting the disciplinary subcommittee with the discretion to determine whether the preponderance of the evidence supports or does not support the findings of fact and conclusions of law of the hearing officer). Moreover, resolving conflicts in the evidence by making credibility determinations is not a basis for reversal of an administrative action. If the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence. [Quotation marks, citation, and alteration brackets omitted.]

We agree that *Anderson* properly sets forth the general principle governing review of credibility determinations by the Subcommittee. However, we cannot ignore the fact that in *Anderson* the relevant testimony did not concern which witness should be believed as to straightforward factual disputes. Rather, it concerned opinions as to whether anatomical injuries that arose following the surgery were caused by errors in surgical technique. *Anderson*, 299 Mich App at 594-597. In other words, the subcommittee in *Anderson* weighed the explanations offered by each side and determined which explanation was likely correct, rather than determining which witnesses were truthfully recounting factual occurrences. Certainly, a licensing subcommittee is in a better position than this Court with respect to evaluating a dispute regarding the scientific cause of an injury. But in this case, the sole issue of credibility turned on which witness accurately recounted the relevant events, and like this Court, the Subcommittee did not personally observe the witnesses' demeanor and hear their testimony.[9] In *Hodge v US Security Assoc, Inc*, 497 Mich 189, 195; 859 NW2d 683 (2015), our Supreme Court observed that "[t]he *ALJ*, the only adjudicator who actually heard testimony and observed the demeanor of the witnesses while testifying, reviewed all the evidence in the record and made findings of fact based on the credibility of witnesses and weight of the evidence." (Emphasis added.) That said, it is clear that we must nonetheless give deference to credibility assessments made in administrative proceedings, including those made by a subcommittee. And we recognize that findings of fact can often entail underlying credibility assessments, and the Subcommittee was tasked with reviewing findings of fact. See MCL 333.16237(1) and (3).

In this case, respondent offered a version of events that she argued established that her actions did not constitute negligence, a violation of due care, or incompetence. She provided

---

[9] A subcommittee simply reviews recommended findings of fact and conclusions of law, as well as the record of the hearing, and it does not take its own testimony or evidence. See MCL 333.16237(3).

testimony and evidence explaining her actions and giving reasons for her conduct that could reasonably be construed as showing that petitioner had not proven its case by a preponderance of the evidence. Indeed, as already mentioned, the ALJ fully embraced her claims, finding her testimony credible and finding that the evidence introduced by petitioner in support of its version of events lacked credibility. Yet, in examining the Subcommittee's ruling, we find no acknowledgment whatsoever of the testimony and evidence favorable to respondent, let alone an effort to explain why it rejected the evidence. This is especially concerning because the ALJ relied on that evidence in issuing the PFD. The Subcommittee simply ignored the bases for the ALJ's ultimate recommendations. We cannot ascertain from the Subcommittee's order whether it found that respondent's assertions lacked credibility,[10] whether it found the assertions to be true but not relevant to a resolution of the charges, or whether it in fact reviewed or considered those assertions.

MCL 333.16237(1) and (3) make clear that the Subcommittee was required to review the findings of fact and conclusions of law, but the Subcommittee's written ruling does not evidence that it reviewed the most pertinent aspects of the ALJ's PFD, including in regard to petitioner's expert, and it gave no shrift to any of respondent's claims. Similarly, MCL 333.16237(4) obligated the Subcommittee to decide whether a preponderance of the evidence supported the ALJ's findings of fact and conclusions of law, but absent any indication in its ruling that the Subcommittee actually reviewed or considered the reasons at the heart of the ALJ's recommendations, we cannot discern whether the Subcommittee properly applied the preponderance standard. Thus, with respect to the question whether the Subcommittee's *decision* was supported by competent, material, and substantial evidence on the whole record, we cannot properly evaluate that issue when the Subcommittee's decision did not reflect that it reviewed and considered important components of the PFD issued by the ALJ.

In sum, we hold that the Subcommittee's decision was inadequate for the reasons expressed above, making it impossible for us to properly resolve this appeal. We thus reverse and remand for elaboration by the Subcommittee with respect to its ruling.[11]

Vacated and remanded for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Sima G. Patel
/s/ Christopher P. Yates
/s/ Douglas B. Shapiro

---

[10] We note that this Court has stated that credibility assessments "*generally* will not be disturbed." *Risch*, 274 Mich App at 372 (emphasis added).

[11] Nothing in this opinion should be construed as precluding the Subcommittee from reversing its earlier ruling should it deem it appropriate to do so.

# Court of Appeals, State of Michigan

# ORDER

IN RE LIZA MICHELLE BARNETT, LPN

Docket No.  366948

LC No.  20-023817

Sima G. Patel
Presiding Judge

Christopher P. Yates

Douglas B. Shapiro
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings, specifically for the Board of Nursing Disciplinary Subcommittee (the Subcommittee) to further elaborate the basis of the ruling from which Appellant appeals, and if it deems appropriate, to reconsider its decision.  We retain jurisdiction.  The Subcommittee shall issue any opinion and order following remand within 42 days of this order.

Any challenges to the Subcommittee's actions on remand must be raised in this appeal.  Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal.  The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

The parties must serve copies of their filings to the Subcommittee on this Court.  Appellant must file with this Court copies of all orders entered on remand within seven days of completion of the remand and must ensure the transcript of proceedings on remand, if any, is filed in the trial court and this Court within 21 days after completion of the proceedings.

_____
Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

September 19, 2024
Date

Chief Clerk