*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* ELEANORE KUE, M.D.

---

DEPARTMENT OF LICENSING AND
REGULATORY AFFAIRS,

        Petitioner-Appellee,

v

ELEANORE KUE, M.D.,

        Respondent-Appellant.

UNPUBLISHED
December 12, 2024
3:19 PM

No. 366363
LARA Bureau of
Professional Licensing
LC No. 20-027197

---

Before: GADOLA, C.J., and SWARTZLE and LETICA, JJ.

PER CURIAM.

Respondent, Eleanore Kue, M.D., appeals as of right the decision of the Board of Medicine's Disciplinary Subcommittee (DSC), part of the Bureau of Professional Licensing in the Department of Licensing and Regulatory Affairs (LARA), concluding that respondent is subject to disciplinary action under MCL 333.16221(a). We affirm.

## I. FACTS

Petitioner initiated this case seeking disciplinary action against respondent for allegedly violating the Public Health Code, MCL 333.1101 *et seq*. An administrative hearing was held before an administrative law judge (ALJ), who issued a proposal for decision setting forth findings of fact and conclusions of law, and recommending that respondent was not subject to discipline because petitioner had failed to prove that respondent had violated the Public Health Code.

The DSC accepted the ALJ's findings of fact, but rejected in part the ALJ's conclusions of law, holding that the record demonstrated that petitioner established by a preponderance of the evidence that respondent's conduct violated MCL 333.16221(a). The DSC cited in part the testimony of Janice Waldmiller, a pharmacy specialist with LARA qualified as an expert in

-1-

pharmacy and drug diversion. Waldmiller testified that Klonopin (a benzodiazepine, with the generic name of "clonazepam") and methadone (an opioid) when used together pose a serious risk because they depress the central nervous system and respiration. Waldmiller testified that the Food and Drug Administration (FDA) placed a black box warning on both methadone and any benzodiazepine or opioid indicating that prescribing the medications together places patients at risk of death. She testified that a black box warning is the highest warning that the FDA issues. In 2020, the FDA warning was updated regarding coordination of care, which refers to communication between health care providers about a patient's treatment. Waldmiller testified that it is extremely dangerous for providers to fail to coordinate care.

Waldmiller testified that respondent's prescribing practices were dangerous because she repeatedly failed to coordinate patient care with other health care providers. Waldmiller testified that two methadone clinics informed her that respondent was not responding to their attempts to coordinate care with respondent regarding her patients. A third clinic reported to Waldmiller that some of respondent's patients had been discharged from their clinic because the patients were discovered to be using benzodiazepines. Waldmiller identified several of respondent's patients who died of mixed drug overdoses within 30 days of respondent prescribing medications for each patient.

Waldmiller also believed respondent to be involved in drug diversion because she prescribed benzodiazepines very often, which was particularly unusual for an urgent care practice. She testified that in 2016, respondent was within the top 100 prescribers in Michigan for alprazolam (Xanax) in a one milligram dose out of over 40,000 prescribers. In 2017, respondent was ranked in the top 100 for prescribing alprazolam in a one milligram dose, all year and in all quarters, and tramadol (an opioid used for pain) in a 50 milligrams dose, all quarters. In the second quarter of 2017, respondent was within the top 100 for prescribing promethazine with codeine. For 2018, respondent was in the top 100 for prescribing alprazolam in a one milligram dose and tramadol in a 50 milligrams dose. For the four quarters of the year in 2018, respondent was ranked 15, 15, 13, and 25 out of all Michigan prescribers with regard to the frequency of prescribing alprazolam. For the four quarters of 2019, respondent was ranked for prescribing alprazolam in a one milligram dose as 23, 18, 19, and 36 among Michigan prescribers.

Dr. Carl Christensen, qualified as an expert in medicine with a specialization of pharmacy, addiction medicine, and drug diversion, testified that it is dangerous to prescribe methadone and Klonopin to a patient at the same time. He testified regarding the black-box warning recommending against the combined use of opioids and benzodiazepines and emphasized the importance of coordination of care among providers. Christensen testified that of 103 client facsimiles from methadone clinics that were taken from respondent's office, 101 did not indicate that respondent had coordinated the patients' care with the methadone clinics.

Dr. Christensen testified that in 2016, 52% of respondent's patients had been prescribed at least one opioid, and in 2017, the amount was 42%, whereas the national average was between 20% and 25%. He said that this was a "red flag" and unusual because respondent did not specialize in pain management. In 2016, 34% of respondent's patients had been prescribed at least one benzodiazepine; in 2017, the amount was 38%; in 2018, it was 40%; and in 2019, it was 41%, whereas the national average was roughly 10%. He testified that this was a "red flag" and unusual because "it would be a psychiatrist who typically runs 25 to 30 percent." Dr. Christensen testified

that respondent "engaged in a large amount of prescriptions of tramadol, clonazepam one milligram and alprazolam one milligram," which he opined indicated "pattern prescribing."

Dr. Christensen testified that data from Medicare showed that five of the top six drugs prescribed by respondent were controlled substances. Dr. Christensen reviewed records of 14 of respondent's patients, and testified that in each file respondent "failed to document that [controlled substances] were being used for a legitimate medical purpose" and that this was evidence of drug diversion. He stated that respondent, in various instances, failed to do addiction assessments, sedative-use-disorder evaluations, drug screenings, and proper documentation of prescription searches, and respondent sometimes prescribed dangerous combinations of drugs.

Michigan State Police Sergeant Brett Brice testified that he conducted an undercover investigation of respondent's clinic beginning in June 2019, posing as a patient. Brice testified that a man in the waiting room of respondent's clinic told him that people came to the clinic because it was easy to get drugs from respondent. Brice told the medical assistant that he was new to the area and wanted Xanax/alprazolam. He told her that he did not have anxiety or depression, but that Xanax helped him to get through the day. Brice testified that respondent told him that she could prescribe Klonopin for him instead, as well as buspirone for anxiety, even though he had not reported anxiety.

The sergeant made another undercover visit in July 2019, and observed the same man he had spoken with at the earlier visit in the waiting area. When he told a woman who was waiting that he had gotten Klonopin from respondent at his earlier visit, the woman replied, "She only writes for Klonopin now. It's bullshit. She used to write for Xanax." The woman also told him that respondent would give him a prescription for one milligram pills if he told respondent that he needed to take two of the .5 milligram pills at a time. When Brice met with respondent, she agreed to prescribe the one milligram pills.

Brice made another undercover visit later in July 2019. A man in the waiting room who was "nodding off" told Brice that he and his wife were there "to get their benzos." Two women patients in the waiting room told the sergeant that they had "just come from the methadone clinic down the street" and were at respondent's clinic "to get either Xanax or Klonopin." When Sergeant Brice saw respondent, she prescribed him Klonopin and buspirone.

Brice made another undercover visit in August 2019, when he observed a man in the waiting room who smelled strongly of intoxicants; his girlfriend, who accompanied him, was nodding off. The girlfriend was on methadone, and the man explained that combining methadone with Klonopin "increases the high." Both were there to get Klonopin from respondent, and the man said that he "gets his Klonopin to sell." The sergeant set up a buy and bought Klonopin from the man the next day at a homeless shelter. Respondent again prescribed Klonopin and buspirone for the officer.

Michigan State Police Trooper Thomas Proffitt made an undercover visit to respondent's clinic in October 2019. He testified that a patient who was waiting told him that respondent was not a very good doctor, but "she'll give you what you want." Proffitt told the office manager that he had been buying Xanax on the street; the manager told him not to tell respondent that and also told him that he might need to come back every 15 days because prescriptions were given for 15

days' worth of pills. The office manager also told him that 80 to 90 percent of respondent's patients were addicts, and that some patients had been coming to the clinic for years "because they know they can get their medications." Trooper Proffitt told respondent that he wanted Xanax for anxiety, and she told him that she would prescribe Klonopin. Trooper Proffitt made another undercover visit in November 2019. He observed that the patients in the waiting area seemed to know each other and were "kind of having a good time." He was charged $40 for a copay even though his insurance had a $5 copay. Respondent again prescribed Klonopin for him.

Dr. Lorenz Kielhorn with Victory Clinic testified that in 2017 and 2018, he tried at least 20 times to coordinate care with respondent concerning his patients who were using methadone who also had been prescribed Klonopin by respondent, but received no response from respondent.

Dr. Mark Edward Berndt with the Red Cedar Clinic testified that a large number of patients receiving treatment at his methadone clinic also were being prescribed benzodiazepines by respondent. Dr. Berndt testified that he frequently had problems trying to coordinate care with respondent and that his efforts to coordinate care were met with resistance by respondent. Dr. Julie Wilson with Red Cedar Clinic also testified that she did not receive responses from respondent when attempting to coordinate care.

David Goodyear, a pharmacist, testified that he became concerned about respondent's prescribing practices when multiple family members or acquaintances came to the pharmacy at the same time with the same prescriptions for the same amount and same dosage. The pharmacy refused to fill the prescriptions beginning in 2015 or 2016.

The ALJ concluded that petitioner failed to prove by a preponderance of the evidence that respondent had violated the Public Health Code. The DSC accepted the ALJ's findings of fact and the ALJ's conclusions of law that respondent did not violate MCL 333.16221(b)(i), (b)(vi), (c)(iv), and MCL 333.7303a(4). The DSC rejected, however, the ALJ's conclusion that petitioner had not demonstrated by a preponderance of the evidence that respondent violated MCL 333.16221(a). The DSC placed respondent on probation for one year and ordered her to pay a fine of $2,000. Respondent now appeals.

## II. DISCUSSION

Respondent contends that the decision of the DSC is not supported by competent, material, and substantial evidence, and also is arbitrary and capricious. We disagree.

A ruling by a disciplinary board or subcommittee is reviewed by this Court on appeal solely under Const 1963, art 6, § 28. *In re Sangster*, 340 Mich App 60, 66; 985 NW2d 245 (2022). Const 1963, art 6, § 28 provides, in relevant part:

> All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law;

and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. . . .

When reviewing a decision of a disciplinary subcommittee, we review the entire record to determine whether the decision was supported by competent, material, and substantial evidence on the whole record. *In re Sangster*, 340 Mich App at 67; *In re Butler*, 322 Mich App 460, 464; 915 NW2d 734 (2017). "Substantial evidence" is evidence that a reasonable person would accept as sufficient to support a conclusion, and may be substantially less than a preponderance of evidence, although more than a scintilla of evidence. *Id*. at 465. A decision is not "authorized by law" under Const 1963, art 6, § 28 if it is in violation of a statute or a constitutional provision, exceeds the agency's statutory authority or jurisdiction, is based upon unlawful procedure resulting in material prejudice, or is arbitrary and capricious. *Id*. at 465. "A ruling is arbitrary and capricious when it lacks an adequate determining principle, when it reflects an absence of consideration or adjustment with reference to principles, circumstances, or significance, or when it is freakish or whimsical." *Wescott v Civil Serv Comm*, 298 Mich App 158, 162; 825 NW2d 674 (2012).

MCL 333.16237(4) provides, in relevant part:

If a disciplinary subcommittee finds that a preponderance of the evidence supports the recommended findings of fact and conclusions of law of the hearings examiner indicating that grounds exist for disciplinary action, the disciplinary subcommittee shall impose an appropriate sanction. . . . If the disciplinary subcommittee finds that a preponderance of the evidence does not support the findings of fact and conclusions of law of the hearings examiner indicating that grounds exist for disciplinary action, the disciplinary subcommittee shall dismiss the complaint. . . .

In this case, the DSC determined that petitioner had demonstrated that respondent had violated MCL 333.16221(a), which provides in part:

The disciplinary subcommittee shall proceed under section 16226 if it finds that 1 or more of the following grounds exist:

(a) Except as otherwise specifically provided in this section, a violation of general duty, consisting of negligence or failure to exercise due care, including negligent delegation to or supervision of employees or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may impair, the ability to safely and skillfully engage in the practice of the health profession.

Respondent contends that the DSC's decision was arbitrary and capricious because the DSC accepted the findings of fact of the ALJ, but rejected the ALJ's conclusion of law regarding MCL 333.16226(a). In support of this argument, respondent cites *Esler v Consumer & Indus Servs*, unpublished per curiam opinion of the Court of Appeals, issued June 25, 1999 (Docket No. 209036); p 2, wherein an agency accepted an ALJ's findings of fact but rejected the ALJ's conclusions of law, and this Court concluded that the agency's decision was defective. Unpublished opinions are not binding upon this Court, however. *Astemborski v Manetta*, 341 Mich App 190, 203; 988 NW2d 857 (2022). Moreover, *Esler* is distinguishable from the present case. In *Esler*, this Court stated:

In this case, after adopting the administrative law judge's findings of fact, the disciplinary subcommittee stated its own conclusion, which was contrary to the administrative law judge's proposed conclusion. It completely failed to articulate its reasoning or to articulate facts that supported its decision to deny reclassifying petitioner's license to a fully[] unrestricted one. We cannot review the decision under such circumstances. [*Esler*, unpub op at 2.]

Here, the DSC identified ample evidence in the record supporting its decision. The DSC accepted the ALJ's findings of fact as "a reiteration and summary of the testimony and evidence presented at the administrative hearing," then specifically identified the facts supporting its decision that petitioner had established grounds for discipline under MCL 333.16221(a). That decision was neither arbitrary nor capricious, and the reasoning path of the DSC is apparent from its opinion and supported by specifically identified evidence.[1]

Respondent also argues that the ALJ's decision must be afforded great deference. We disagree. The DSC is not bound by the recommended findings and conclusions of the hearing officer. *Dep't of Community Health v Anderson*, 299 Mich App 591, 599; 830 NW2d 814 (2013). Rather, the ALJ makes recommended findings of fact and conclusions of law, MCL 333.16231a(2), which the DSC may revise as necessary. MCL 333.16237(3). See also Mich Admin Code, R 338.1630(5), which provides:

In its final order, a disciplinary subcommittee, board, or task force may adopt, modify, or reject, in whole or in part, the opinion or proposal for decision of the administrative law judge. If the disciplinary subcommittee, board, or task force modifies or rejects the opinion or proposal for decision, the reasons for that action must be stated in the final order.

This Court has observed that the credibility findings of the disciplinary subcommittee are entitled to deference, but not the findings of the ALJ. See *Anderson*, 299 Mich App at 599-600.

Respondent also contends that the DSC's decision was not supported by competent, material, and substantial evidence, essentially challenging the weight given the evidence by the DSC. She argues that Waldmiller's testimony was of questionable value. Waldmiller, however, was qualified as an expert in "pharmacy and drug diversion," and the DSC found her testimony credible. This Court defers to the DSC's credibility determinations and also gives deference to its expertise. *Anderson*, 299 Mich App at 599-600.

Respondent also contends that the DSC improperly relied on the testimony of Sergeant Brice, arguing that respondent treated the officer appropriately and that his statements about

---

[1] In the subsequent opinion of *Esler v Dep't of Consumer & Indus Servs*, unpublished per curiam opinion of the Court of Appeals, issued February 15, 2002 (Docket No. 226347); pp 1, 4, this Court concluded that upon remand the agency provided sufficient reasoning "to enable this Court to discern the path by which the [agency] reached its decision."

patients who were "nodding off" in the waiting area were immaterial. The officer's testimony must be viewed in context, however. He saw people "nodding off" multiple times, over three different visits, in connection with an alleged top provider of benzodiazepines. In addition, respondent gave the officer a prescription for Klonopin even though he had admitted that he had been getting Xanax "from guys at work." When viewed in context, the DSC's reliance on the officer's testimony was appropriate.

Respondent similarly challenges the DSC's reliance on the testimony of Dr. Carl Christensen regarding respondent's lack of coordination of care for patients who were receiving methadone at methadone clinics, contending that he only looked at facsimiles received from the clinics and did not know if responses to the coordination-of-care letters had been sent. Respondent contends that the DSC should have credited her testimony that she did, in fact, coordinate care. Again, the DSC was the determiner of credibility, and the DSC also relied on the coordination-of-care testimony of Dr. Lorenz Kielhorn, who testified that he repeatedly tried in vain to coordinate care with respondent concerning their mutual patients who were receiving methadone and to whom respondent had been prescribing Klonopin. The DSC's decision regarding respondent's failure to coordinate the care of patients has adequate support in the record.

Respondent also asserts that Dr. Christensen could not properly opine on respondent's actions because he practices in addiction medicine and not in urgent care, as respondent does. Respondent, however, provides no authority for the proposition that, in an administrative disciplinary proceeding, an expert witness must be certified in the same area or practice in the same area as the respondent. It is not sufficient for a party simply to assert a position without supporting authority and argument. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Respondent has not demonstrated that the DSC erred by relying, in part, on the testimony of Dr. Christensen.

Respondent's arguments essentially are that the DSC should have made the same weight and credibility determinations regarding the evidence that the ALJ apparently did. The DSC, however, was not bound by the determinations of the ALJ and was within its discretion in determining whether a preponderance of the evidence supported the ALJ's conclusions. See *Anderson*, 299 Mich App at 599. Moreover, this Court will not reverse an administrative action by resolving a dispute regarding the credibility of the evidence. *Id*. ("This Court will defer to the disciplinary subcommittee's credibility determinations because they are supported by 'competent, material and substantial evidence on the whole record' and are within the expertise of the subcommittee."). The DSC's decision was not arbitrary and capricious, and was adequately supported by competent, material, and substantial evidence.

Affirmed.

/s/ Michael F. Gadola
/s/ Brock A. Swartzle
/s/ Anica Letica

-7-