DEPARTMENT OF CONSUMER AND INDUSTRY SERVICES v
GREENBERG

Docket No. 202352. Submitted June 2, 1998, at Lansing. Decided September 4, 1998, at 9:00 A.M.

The Department of Consumer and Industry Services, Bureau of Occupational and Professional Regulation, filed an administrative complaint with the Disciplinary Subcommittee of the Michigan Board of Optometry charging William A. Greenberg with, among other things, violations of MCL 333.16221(a), (b)(vi), (b)(xi), and (h); MSA 14.15(16221)(a), (b)(vi), (b)(ix), and (h) for engaging in conduct that led to his conviction of two counts of criminal assault and battery involving his employees. A hearing referee proposed that the disciplinary subcommittee decide that no violations occurred. The disciplinary subcommittee rejected the hearing referee's proposal and issued an order that suspended Greenberg's optometry license, placed him on probation, imposed a fine, and required him to perform community service. Greenberg appealed.

The Court of Appeals *held*:

1. The failure of the disciplinary subcommittee to meet and impose a penalty on Greenberg within sixty days of receiving the hearing referee's proposal for decision, as required by MCL 333.16232(3); MSA 14.15(16232)(3), did not warrant dismissal of the complaint. Section 16232(3) sets a time frame for the processing of disciplinary complaints, but does not provide for dismissal of complaints for missed deadlines. Also, Greenberg did not allege that he suffered prejudice as a result of the delay.

2. The disciplinary subcommittee violated no provision of the Public Health Code, MCL 333.1101 *et seq.*; MSA 14.15(1101) *et seq.*, by rejecting the hearing referee's proposal for decision. No section of the Public Health Code conditions a disciplinary subcommittee's power to sanction a licensee on a prior concurring conclusion by a hearing referee. MCL 333.16227(2); MSA 14.15(16227)(2) *explicitly* grants a subcommittee broad power to sanction or take additional disciplinary action. MCL 333.16237(3); MSA 14.15(16237)(3) grants a subcommittee discretion to review and revise proposals for decision.

3. The suspension of Greenberg's optometry license and the imposition of a fine do not violate the constitutional prohibition against double jeopardy in light of his criminal conviction. The license suspension served the nonpunitive purpose of protecting the public welfare, and Greenberg failed to make a threshold showing that the fine was overwhelmingly disproportionate to the government's damages and expenses.

4. The disciplinary subcommittee erred in deciding that Greenberg's conviction of criminal assault and battery indicated lack of good moral character, MCL 333.16221(b)(vi); MSA 14.15(16221)(b)(vi). However, the error was harmless because the sanctions imposed on Greenberg were justified by his other violations.

Affirmed.

1. Public Health — Licensed Professionals — Disciplinary Subcommittees — Meetings.

The statute that requires that a disciplinary subcommittee meet within sixty days of receiving a hearing referee's proposal for decision with respect to a disciplinary complaint against a licensed health-care professional does not provide for dismissal of the complaint where the disciplinary subcommittee fails to meet within the required period (MCL 333.16232[3]; MSA 14.15[16232][3]).

2. Public Health — Licensed Professionals — Disciplinary Subcommittees — Hearing Referees — Proposals for Decision.

A disciplinary subcommittee with jurisdiction over a licensed health-care professional may, at its discretion, accept, reject, or revise a hearing referee's proposal for decision regarding an administrative complaint filed against a health-care professional (MCL 333.16216[3],[4], 333.16227[2], 333.16237[3]; MSA 14.15[16216][3], [4], 14.15[16227][2], 14.15[16237][3]).

3. Constitutional Law — Double Jeopardy — Multiple Punishment.

The Double Jeopardy Clause protects against the imposition of multiple criminal punishments for the same offense; while the imposition of a civil penalty under a statutory scheme that is punitive in purpose or effect may transform the penalty into a criminal penalty for purposes of double jeopardy, a civil penalty that serves a nonpunitive purpose and is imposed for conduct that led to criminal conviction does not give rise to a double jeopardy violation (US Const, Am V; Const 1963, art 1, § 15).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Howard C. Mardero-*

*sian,* Assistant Attorney General, for Department of Consumer and Industry Services.

*Maddin, Hauser, Wartell, Roth, Heller & Pesses, P.C.* (by *Lori G. Talsky*), for William A. Greenberg.

Before: SAWYER, P.J., and KELLY and DOCTOROFF, JJ.

PER CURIAM. William A. Greenberg appeals as of right from a Board of Optometry Disciplinary Subcommittee order temporarily suspending his license, placing him on probation, fining him, and requiring that he perform community service work. The subcommittee sanctioned appellant after it found that he lacked good moral character, MCL 333.16221(b)(vi); MSA 14.15(16221)(b)(vi). The Department of Consumer and Industry Services had filed an administrative complaint against appellant after discovering that he had been convicted of two counts of criminal assault and battery involving his female employees. We affirm.

Appellant first argues that the complaint against him should have been dismissed because the subcommittee violated the requirement that it meet and impose a penalty on appellant within sixty days after receiving the hearing referee's proposal for decision. MCL 333.16232(3); MSA 14.15(16232)(3) requires that the subcommittee meet within sixty days after receiving the hearing referee's proposal for decision. However, this section does not provide for dismissal of a complaint whenever the subcommittee is tardy. The lack of sanction leads us to believe that the time frames set out and relied on by appellant are primarily guidelines for the disciplinary system at issue here. Although the use of "shall" usually indicates a mandatory requirement, *Jordan v Jarvis,* 200 Mich

App 445, 451; 505 NW2d 279 (1993), other statutory language and legislative intent indicate that "shall" in this instance is permissive. *Murphy v Sears, Roebuck & Co*, 190 Mich App 384, 386-387; 476 NW2d 639 (1991). Although other provisions of the Public Health Code, 1978 PA 368, MCL 333.1101 *et seq.*; MSA 14.15(1101) *et seq.*, impose a time frame for disciplinary complaint processing, none of the provisions provide for dismissal based on a violation of the deadlines. MCL 333.16241(8)(e); MSA 14.15(16241) (8)(e) explicitly contemplates that delays will occur within the various stages of the disciplinary process. Therefore, we conclude that the passage of more than sixty days, especially in the complete absence of any specific allegations of prejudice suffered by appellant, did not require dismissal of the complaint.

Appellant next contends that the subcommittee's rejection of the hearing referee's conclusion that appellant's actions warranted no disciplinary sanctions exceeded its permitted statutory scope of review. MCL 333.16237(4); MSA 14.15(16237)(4) addresses subcommittee review of a proposal for decision that concludes that sanctions should be imposed. No section of the Public Health Code conditions the subcommittee's power to sanction on a prior concurring conclusion by the hearing referee. See MCL 333.16216(3), (4); MSA 14.15(16216)(3), (4) and MCL 333.16226(2); MSA 14.15(16226)(2). Furthermore, MCL 333.16227(2); MSA 14.15(16227)(2) explicitly grants the subcommittee broad power to sanction or take additional disciplinary action. MCL 333.16237(3); MSA 14.15(16237)(3) grants the subcommittee discretion to review and revise proposals for decision. In light of these provisions, we conclude

that the subcommittee did not violate any provision of the Public Health Code by rejecting the hearing referee's findings of fact and concluding, contrary to the referee, that appellant's actions warranted sanctions.

Third, appellant claims that the subcommittee's suspension of his optometry license for thirty days and its imposition of a $1,000 fine based on behavior for which he had already been criminally convicted violated double jeopardy. US Const, Am V; Const 1963, art 1, § 15. The federal and Michigan constitutional double jeopardy provisions "protect a person from being twice placed in jeopardy for the 'same offense.' " *People v Torres*, 452 Mich 43, 63; 549 NW2d 540 (1996). "[T]he Double Jeopardy Clause does not prohibit the imposition of any additional sanction that could . . . be described as punishment." *Hudson v United States*, 522 US 93; 118 S Ct 488, 493; 139 L Ed 2d 450 (1997). The clause protects against the imposition of multiple criminal punishments for the same offense. *Id.* The United States Supreme Court further stated:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty. [*Id.* (citations omitted).]

This is a return to traditional double jeopardy analysis and a reversal of *United States v Halper*, 490 US

435; 109 S Ct 1892; 104 L Ed 2d 487 (1989), which, until today, has been relied on by this Court, which had stated:

> "[W]hether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." [*People v Artman*, 218 Mich App 236, 245; 553 NW2d 673 (1996), quoting *Halper, supra*, 448.]

The subcommittee's suspension of appellant's license did not violate double jeopardy because it served the expressed legislative goal underlying the Public Health Code of protecting the public welfare, a nonpunitive purpose. Although the $1,000 fine does not directly benefit the public, appellant has failed to "make a threshold showing of punishment by demonstrating that the [fine] is overwhelmingly disproportionate to the government's damages and expenses." *People v Duranseau*, 221 Mich App 204, 207-208; 561 NW2d 111 (1997). Therefore, we conclude that neither of these sanctions violated double jeopardy.

Finally, appellant argues that the subcommittee misinterpreted the statutory definition of good moral character and thus erroneously concluded that defendant lacked good moral character. We review questions of statutory interpretation de novo. *People v Givans*, 227 Mich App 113, 124; 575 NW2d 84 (1997). MCL 333.16221(b)(vi); MSA 14.15(16221)(b)(vi) authorizes the subcommittee to impose sanctions after finding that a licensee lacks good moral character, defined by MCL 338.41(1); MSA 18.1208(1)(1) as "the propensity on the part of the person to serve the

public in the licensed area in a fair, honest, and open manner."

While we find that the activity in question did not necessarily establish defendant's lack of good moral character, we note that defendant was found to have violated MCL 333.16221(a), (b)(xi), and (h); MSA 14.15(16221)(a), (b)(xi), and (h) in addition to MCL 333.16221(b)(vi); MSA 14.15(16221)(b)(vi). Any one of these violations authorized the same degree of punishment that defendant has received. MCL 333.16226; MSA 14.15(16226). Thus, the finding of a lack of good moral character by the subcommittee, in light of the other violations, amounted to harmless error. We conclude that appellant's two assault and battery convictions involving the employees of his optometry office were in violation of subsections 16221(a), (b)(xi), and (h) of the Public Health Code, as amended, and that the subcommittee's error in finding a lack of good moral character had no substantial effect on the disposition of this matter.

Affirmed.