DEPARTMENT OF COMMUNITY HEALTH v ANDERSON

Docket No. 309675. Submitted February 8, 2013, at Lansing. Decided February 26, 2013, at 9:05 a.m.

On July 28, 2009, the Department of Community Health, Bureau of Health Professions, Board of Veterinary Medicine Disciplinary Subcommittee (petitioner) filed an administrative complaint alleging that respondent, Cynthia S. Anderson, D.V.M, had violated MCL 333.16221(a) and (b)(*i*) as a result of negligence, failure to exercise due care, and incompetence in her treatment of a female canine on February 18, 2008. Following a hearing on June 23, 2010, a hearing officer issued an amended proposal for decision on December 9, 2010, that, in part, included three findings of fact that indicated that respondent did not ligate the dog's bladder, the dog could still urinate two days after respondent performed the surgery, and vomiting and wrenching can cause slippage of ligatures. The hearing officer therefore recommended that the evidence did not establish any statutory violation by respondent. On February 23, 2012, petitioner issued its findings of fact and conclusions of law that rejected the proposed findings of fact of the hearing officer, applied its own findings of fact, and concluded that the charges that respondent had violated the statutes had been proved by a preponderance of the evidence. Respondent appealed the final order of petitioner that found that respondent had violated the statutes and placed respondent on probation for two years, required respondent to complete 10 hours of continuing education, and assessed a $1,000 fine.

The Court of Appeals *held*:

1. The disciplinary subcommittee's findings of fact and conclusions of law were supported by competent, material, and substantial evidence on the whole record. The Court of Appeals defers to the disciplinary subcommittee's credibility determinations that are supported by competent, material, and substantial evidence on the whole record and, as in this case, are within the expertise of the subcommittee.

2. Petitioner's alleged failure to comply with the mandates of MCL 333.16237(5), that the hearing before the hearing officer and final disciplinary subcommittee action shall be completed within

one year after the department initiates an investigation, and MCL 333.16232(3), that a disciplinary subcommittee shall meet within 60 days after receipt of the recommended findings of fact and conclusions of law from a hearing officer to impose a penalty, does not warrant dismissal of the disciplinary proceedings. Although the statutes contain mandatory language ("shall"), the statutes do not provide a sanction for their violation. The lack of a sanction indicates that the time frames set out in the statutes are primarily guidelines for the disciplinary system at issue. The statutory mandates are designed to provide accountability to the department entrusted with the disciplinary process. The statutes do not confer substantive rights to the individual against whom the allegations are made.

Affirmed.

1. ADMINISTRATIVE LAW — HEARING OFFICERS — DISCIPLINARY SUBCOMMITTEES.

The Board of Veterinary Medicine Disciplinary Subcommittee is not bound by a hearing officer's recommended findings and is vested with the discretion to determine whether the preponderance of the evidence supports or does not support the findings of fact and conclusions of law of the hearing officer (MCL 333.16237[4]).

2. ADMINISTRATIVE LAW — PUBLIC HEALTH — LICENSED PROFESSIONALS — DISCIPLINARY SUBCOMMITTEES.

The time periods in MCL 333.16237(5), which requires that the hearing before a hearing officer and final action by a disciplinary subcommittee shall be completed within one year after the department initiates an investigation of a health-care licensee, and MCL 333.16232(3), which provides that a disciplinary subcommittee shall meet within 60 days after receipt of the recommended findings of fact and conclusions of law from a hearing officer to impose a penalty, are designed to provide accountability to the department entrusted with the disciplinary process and do not confer substantive rights to the licensee; although the statutes contain mandatory language ("shall"), the statutes do not provide a sanction for their violation and primarily provide guidelines for the discipline system at issue.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Richard A. Bandstra*, Chief Legal Counsel, and *Robert J. Jenkins* and *Bruce C. Johnson*, Assistant Attorneys General, for petitioner.

*Plunkett Cooney* (by *John P. Deegan* and *Daniel W. Mabis*) for respondent.

Before: K. F. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM. Respondent, Cynthia S. Anderson, D.V. M., appeals by right the March 20, 2012, final order of the Michigan Board of Veterinary Medicine Disciplinary Subcommittee finding that respondent violated MCL 333.16221(a) and MCL 333.16221(b)(*i*). The disciplinary subcommittee found that during a C-section to remove a dead fetus and a diseased uterus, respondent ligated[1] the dog's bladder rather than the uterine stump. The disciplinary subcommittee also found that respondent failed to break down adhesions (scar tissue) to separate the dog's organs before attempting the ligation, which was further evidence of respondent's negligent and incompetent care. The disciplinary subcommittee, in its final order, placed respondent on probation for two years, required her to complete 10 hours of continuing education, and assessed a $1,000 fine. We affirm.

On July 28, 2009, petitioner, Department of Community Health, Bureau of Health Professions, Board of Veterinary Medicine Disciplinary Subcommittee, filed an administrative complaint alleging that respondent had violated MCL 333.16221(a) "consisting of negligence or failure to exercise due care . . . whether or not injury results," and violated MCL 333.16221(b)(*i*), "[p]ersonal disqualifications, consisting of . . . [i]ncompetence." The complaint alleged in ¶ 5:

---

[1] To "ligate" is "to bind with or as if with a ligature." *Random House Webster's College Dictionary* (1997). A "ligature" is "anything that serves for binding or tying up, as a band, bandage, or cord." *Id.*

On February 18, 2008, "Laya," a female canine with a history of caesarians, presented to the facility because her water broke, but she never gave birth. Respondent performed a caesarian section and was given consent to perform a spay procedure. During the procedure, Respondent failed to break down the adhesions and ligated the bladder along with the uterine stump.

At a hearing on June 23, 2010, respondent, John Bumstead, Laya's owner, and several other veterinarians testified. Dr. Kenneth McCrumb, who performed exploratory surgery on Laya on February 25, 2008, also testified. In a statement drafted on February 26, 2008, admitted as Exhibit C, McCrumb wrote that Laya's "bladder had a ligature around it, eliminating 90% of its storage capacity and was necrotic. The uterine stump was represented by a large ball of necrotic tissue." McCrumb also found Laya's ureters were "unattached to the bladder and ending in the abdomen [and] were depositing urine into the abdomen and not into the bladder, consequently urine was leaking from the incision." Laya was euthanized.

Respondent testified, denying that she had ligated Laya's bladder or severed the dog's ureters. Respondent also testified that on February 20, 2008, after Bumstead brought Laya back to respondent's clinic because of her deteriorating condition, she had observed Laya urinating—something not possible if Laya's bladder were tied off. This claim was supported by a file note dated February 20, 2008, at 4 p.m.: "urination noted." But other evidence indicated that after the February 18 surgery Laya was leaking fluid from her incisions. Bumstead testified that he took Laya back to respondent's clinic two days after the surgery because "her teeth were chattering, I mean, she wasn't eating. She wasn't peeing. She wasn't pooping. So she wasn't doing

anything that you would expect of a dog that's in recover."

On December 9, 2010, the hearing officer issued an amended proposal for decision that included findings 4 (respondent did not ligate the dog's bladder), 6 (Laya could still urinate two days after surgery), and 7 (vomiting and wrenching can cause slippage of ligatures). In her proposed conclusions of law, the hearing officer noted that the evidence did not contradict respondent's testimony that she observed urination days after the surgery, which veterinarians for both parties agreed would not have been possible if the dog's bladder had been ligated during surgery two days previously. The hearing officer also accepted proffered defense expert testimony theorizing that there was slippage of a ligature due to wrenching caused by Laya's vomiting. Consequently, the hearing officer recommended that the evidence did not establish any violation of general duty, negligence or failure to exercise due care under MCL 333.16221(a) nor did it establish incompetence under MCL 333.16221(b)(*i*).

On February 23, 2012, the disciplinary subcommittee issued its findings of fact and conclusions of law, rejecting the hearing officer's proposed findings 4, 6, and 7. With respect to proposed finding 4, the disciplinary subcommittee found that respondent did ligate the dog's bladder during the surgery on February 18, 2008. The disciplinary subcommittee found compelling Dr. McCrumb's February 26, 2008, statement regarding what he found a week after respondent's surgical treatment of Laya.

The disciplinary subcommittee also rejected proposed finding 6, reasoning that:

> . . . Dr. McCrumb observed that the ureters were not attached to the bladder, the bladder was necrotic, and the

ureters were depositing urine into the abdomen, not the bladder. Additionally, the owner brought the dog back to Respondent specifically because the dog had not urinated or defecated since being brought home from Respondent's clinic. . . . Therefore, . . . the dog did not have the ability to urinate as Respondent documented.

In addition, when questioned as to whether the dog could urinate if the bladder had been tied off prior to February 20, 2008, Dr. McCrumb testified as follows: "I wouldn't think so because there was essentially no bladder to produce urine." . . . Also, Dr. McCrumb testified that the ureters were not connected to the bladder, the bladder was non-functional and the abdomen was full of fluid determined to be urine coming from the two detached ureters.

The disciplinary subcommittee also rejected finding 7, which theorized that a ligature might have slipped when the dog vomited. The disciplinary subcommittee found that a properly placed ligature would not slip in this way, reasoning as follows:

During his exploratory surgery, Dr. McCrumb had to break down additional adhesions to identify the bladder and uterine stump. The bladder and uterus are not naturally attached. The ligatures would not move from one organ to another, as ligatures are designed to be tight enough to cut off blood flow. Therefore, vomiting and wrenching could not cause slippage of ligatures if properly placed. The Disciplinary Subcommittee notes that the bladder was disconnected from the ureters and necrotic, which indicates the blood flow to the bladder was cut off by the ligatures. Therefore, the Disciplinary Subcommittee rejects Findings of Fact 7.

Applying its own findings of fact, the disciplinary subcommittee rejected the hearing officer's proposed conclusion of law that respondent had not violated MCL 333.16221(a) and MCL 333.16221(b)(i). In addition to the findings summarized already, the disciplinary subcommittee relied on respondent's own testimony:

> Respondent admitted that she failed to break down the adhesions and separate the organs before attempting ligation, causing the structures to remain stuck together, which the Disciplinary Subcommittee concludes is further evidence of Respondent's negligent and incompetent care. As previously stated, Dr. McCrumb could not identify the bladder and uterine stump until he removed the adhesions. Therefore, the Disciplinary Subcommittee concludes the Respondent could not have been able to identify to what organ she attached the ligatures.

The disciplinary subcommittee summarized its findings of fact and conclusions of law that respondent "practiced below the minimal standard of care as a veterinarian and that Respondent was incompetent in her treatment of the dog." The disciplinary subcommittee concluded that the charges were proved by a preponderance of the evidence: that respondent had violated MCL 333.16221(a) and MCL 333.16221(b)(*i*) as alleged in the complaint.

Respondent first argues that the disciplinary subcommittee's findings of fact and conclusions of law are not supported by competent, material, and substantial evidence on the whole record. We disagree.

Appellate review of agency final decisions, findings, rulings, and orders regarding regulated professions is provided for and limited by Const 1963, art 6, § 28. "This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law[.]" *Id.* There is no claim in this case that the disciplinary subcommittee's findings and conclusions were not authorized by law. Also, "in cases in which a hearing is required," as in this case, appellate review includes whether the agency's final decisions, findings, rulings, and orders "are supported by competent, material and substantial evidence on the whole record." *Id.*

Although the agency was required to prove its case by the preponderance of the evidence in the proceedings below, MCL 333.16237(4); *Morreale v Dep't of Community Health*, 272 Mich App 402, 405; 726 NW2d 438 (2006), appellate review does not entail a determination de novo whether this standard was satisfied. "A reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by evidence on the record or because the court might have reached a different result." *Dep't of Community Health v Risch*, 274 Mich App 365, 373; 733 NW2d 403 (2007). Rather, the whole record must be reviewed to determine whether "competent, material and substantial evidence" supported the agency's action. Const 1963, art 6, § 28. "Substantial evidence" is that which " 'a reasonable person would accept as sufficient to support a conclusion.' " *Risch*, 274 Mich App at 372, quoting *Dowerk v Oxford Charter Twp*, 233 Mich App 62, 72; 592 NW2d 724 (1998). To satisfy this standard there must be more than a scintilla of evidence, but less than a preponderance of the evidence may be enough. *Id.*; see also *Huron Behavioral Health v Dep't of Community Health*, 293 Mich App 491, 497; 813 NW2d 763 (2011).

Administrative findings of fact and conclusions of law must also be accorded deference, especially when based on credibility determinations. *Risch*, 274 Mich App at 372. "[S]uch findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence." *Id.* Moreover, an appellate court must generally defer to an agency's administrative expertise. See *Huron Behavioral Health*, 293 Mich App at 497 ("great deference should be given to an agency's administrative expertise").

We find that the Board of Veterinary Medicine Disciplinary Subcommittee's findings of fact and conclusions of law "are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. Respondent's arguments to the contrary are all rooted in the credibility determinations the disciplinary subcommittee made. This Court will defer to the disciplinary subcommittee's credibility determinations because they are supported by "competent, material and substantial evidence on the whole record" and are within the expertise of the subcommittee. *Huron Behavioral Health*, 293 Mich App at 497; *Risch*, 274 Mich App at 372. Consequently, this Court must affirm the final order of the disciplinary subcommittee.

Respondent's main argument is that the disciplinary subcommittee should have believed her testimony as the hearing officer apparently did. But as the statute clearly provides, the disciplinary subcommittee is not bound by the recommended findings of the hearing officer. See MCL 333.16237(4) (vesting the disciplinary subcommittee with the discretion to determine whether the preponderance of the evidence supports or does not support the findings of fact and conclusions of law of the hearing officer). Moreover, resolving conflicts in the evidence by making credibility determinations is not a basis for reversal of an administrative action. "[I]f the administrative findings of fact and conclusions of law are based primarily on credibility determinations, such findings generally will not be disturbed because it is not the function of a reviewing court to assess witness credibility or resolve conflicts in the evidence." *Risch*, 274 Mich App at 372. Respondent's attack on the credibility of Dr. McCrumb also fails for the same reason. "A reviewing court may not set aside factual findings supported by the evidence merely because alternative findings could also have been supported by

evidence on the record or because the court might have reached a different result." *Id.* at 373.

Likewise, whether to accept the defense theory that ligature slippage caused the devastating result that Dr. McCrumb found during his exploratory surgery is uniquely within the expertise of the disciplinary subcommittee. The disciplinary subcommittee cited "competent, material and substantial evidence," respondent's own admissions, the testimony of Bumstead and Dr. McCrumb, and their own expertise, in rejecting this theory. In addition to deferring to the agency's credibility determinations, "great deference should be given to an agency's administrative expertise." *Huron Behavioral Health*, 293 Mich App at 497.

In sum, the disciplinary subcommittee made credibility determinations and utilized its expertise in making its findings of fact and conclusions of law. The disciplinary subcommittee's findings of fact and conclusions of law "are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28. As such, this Court must affirm the final order of the Board of Veterinary Medicine Disciplinary Subcommittee.

Respondent next argues that the proceedings below failed to comply with statutory time lines and must be dismissed. Respondent asserts that petitioner failed to comply with MCL 333.16237(5), which plainly requires that "the hearing before the hearings examiner, and final disciplinary subcommittee action shall be completed within 1 year after the department initiates an investigation . . . ." Respondent also argues that petitioner failed to comply with MCL 333.16232(3), which provides: "A disciplinary subcommittee shall meet within 60 days after receipt of the recommended findings of fact and conclusions of law from a hearings

examiner to impose a penalty." We disagree with respondent that petitioner's failure to comply with these statutory time lines warrants dismissal of this disciplinary proceeding.

It is not clear whether this issue has been preserved by raising it in the proceedings below. See *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). But the issue is one of statutory interpretation and the facts necessary for its decision are not disputed. The Court may overlook preservation requirements if an issue is one of law and the facts necessary for its resolution have been presented. *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). Statutory interpretation presents a question of law that this Court reviews de novo. *Gen Motors Corp*, 290 Mich App at 369.

In *Dep't of Consumer & Indus Servs v Greenberg*, 231 Mich App 466, 468-469; 586 NW2d 560 (1998), this Court looked at the mandatory language in MCL 333.16232(3), which provides that "[a] disciplinary subcommittee shall meet within 60 days after receipt of the recommended findings of fact and conclusions of law from a hearings examiner to impose a penalty." The optometrist in that case argued that the complaint against him had to be dismissed because the disciplinary subcommittee did not meet within 60 days after receiving the hearing referee's proposal. *Greenberg*, 231 Mich App at 468. This Court rejected the idea that dismissal was required because of the agency's failure to follow the mandate. Although the language in the statute was mandatory, there was no language in the statute providing for a consequence for its violation: "The lack of [a] sanction leads us to believe that the time frames set out and relied on by appellant are primarily guidelines for the disciplinary system at issue

here." *Id.* The *Greenberg* Court also pointed to the fact that MCL 333.16241(8)(a) through (d) requires the Department of Commerce to file annual reports to the Legislature, detailing: investigations, complaints, recommendations by boards and task forces, and actions taken by the disciplinary subcommittee. Importantly, MCL 333.16241(8)(e) provides that the report include "[t]he number of extensions and delays granted by the department that were in excess of the time limits required under this article for each phase of the disciplinary process, and the types of cases for which the extensions and delays were granted." Thus, subsection (8)(e) "explicitly contemplates that delays will occur within the various stages of the disciplinary process." *Greenberg*, 231 Mich App at 469. Consequently, the Court held that a violation of the 60-day period of MCL 333.16232(3) did not require dismissal of a disciplinary action. *Id.*

This same reasoning applies with respect to the one-year time limit of MCL 333.16237(5). The statute itself recognizes that exceptions may occur by providing that "[t]he department shall note in its annual report any exceptions to the 1-year requirement." *Id.* Like it did with MCL 333.16232(3), the Legislature similarly has provided no sanction for the violation of the one-year period of MCL 333.16237(5). Therefore, the reasoning of *Greenberg* applies with equal force to violations of the time requirement of MCL 333.16237(5), so respondent's claim for dismissal fails. *Greenberg*, 231 Mich App at 468-469. The statutory mandates at issue in this case and in *Greenberg* are designed to provide accountability to the department entrusted with the disciplinary process. There is simply nothing in these time-related statutes that confers substantive rights to the individual against whom the allegations are made.

We affirm. As the prevailing party, petitioner may tax costs pursuant to MCR 7.219.

K. F. KELLY, P.J., and MARKEY and FORT HOOD, JJ., concurred.