*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* BRENDA SUE GRETTENBERGER, D.V.M.

---

BUREAU OF PROFESSIONAL LICENSING,

Petitioner-Appellee,

v

BRENDA SUE GRETTENBERGER, D.V.M.,

Respondent-Appellant.

UNPUBLISHED
December 16, 2025
10:13 AM

No. 370825
LARA Bureau of Professional
Licensing
LC No. 21-015176

---

Before: SWARTZLE, P.J., and O'BRIEN and BAZZI, JJ.

PER CURIAM.

In this professional licensing case, respondent—a veterinarian—appeals as of right the final order adopting the proposal for decision issued by an administrative law judge (ALJ), in which the ALJ found that respondent violated MCL 333.16221(a), (b)(*i*), and (h) of the Public Health Code, MCL 333.1101 *et seq.*, in relation to respondent's treatment of a dog, Macy, who died following a teeth cleaning. The ALJ found in relevant part that respondent failed to properly supervise Macy's teeth cleaning, which respondent had delegated to a veterinarian technician, because respondent left the clinic without first having one of the other veterinarians at the clinic agree to supervise the cleaning. We agree with respondent that expert testimony was required to determine whether respondent's conduct breached the standard of care for veterinarians. Because there was no such admissible testimony presented in this case, we reverse the part of the order on appeal finding that respondent violated the Public Health Code.

## I. BACKGROUND

On March 13, 2017, Macy was brought to Pol Veterinary Services—the clinic where respondent worked—for a teeth cleaning. Respondent examined Macy for the procedure, and that examination did not reveal any reasons to not go forward with the procedure. So, respondent notified the licensed veterinary technician, Andrea Mata, that Mata should proceed with the

-1-

cleaning. Shortly thereafter, respondent left the clinic to attend to a scheduled "herd health" farm call. Respondent did not explicitly tell either of the clinic's two other veterinarians that she was leaving or that Mata would be performing Macy's teeth cleaning. Mata performed the procedure on Macy while one of clinic's other veterinarians was still at the clinic. When Mata was done, she observed Macy recover from the anesthesia in a kennel without issue. When Macy became alert, however, Mata observed that she was having issues breathing, and one of the clinic's other veterinarians treated Macy. Macy was treated at the clinic for several more hours before she stopped breathing and passed away. The cause of Macy's death is unknown.

Petitioner, the Bureau of Professional Licensing, later brought an administrative complaint against respondent in relation to her treatment of Macy. The Bureau's complaint alleged that respondent failed to adequately examine Macy, did not properly chart Macy's medical information, and failed to properly supervise Macy's cleaning after delegating that task to Mata. The matter proceeded to a five-day hearing, during which each side presented the testimony of expert witnesses about the standard of care for veterinarians. The ALJ ultimately issued a proposal for decision in which it opined that there was not enough evidence to conclude that respondent's examination and charting of Macy was inadequate, but proposed that respondent violated the Public Health Code when she delegated Macy's teeth cleaning to Mata then left the clinic for her farm call before "handing off" supervision of the procedure to one of the clinic's other veterinarians. Before the ALJ issued its opinion, respondent moved to disqualify the Bureau's expert, but the ALJ did not rule on that motion (though the ALJ also did not rely on the testimony of the Bureau's expert in its opinion). Through a procedural oddity, respondent's motion to disqualify the Bureau's expert was considered for the first time by the disciplinary subcommittee. In a single order, the disciplinary subcommittee granted respondent's motion to disqualify the Bureau's expert but also adopted the ALJ's proposal for decision.

This appeal followed.

## II. STANDARDS OF REVIEW

The disciplinary subcommittee's final decision is appealable to this Court as of right. MCL 333.16237(6). Direct review of a disciplinary subcommittee's decision is limited to considering whether the ruling was authorized by law; was supported by competent, material, and substantial evidence; was arbitrary, capricious, or clearly an abuse or unwarranted exercise of discretion; or was otherwise affected by a substantial and material error of law. See Const 1963, art 6, § 28 and MCL 24.306(1). See also *Dignan v Michigan Pub Sch Employees Ret Bd*, 253 Mich App 571, 576; 659 NW2d 629 (2002) (recognizing the same standard for circuit courts when sitting in direct review of an administrative agency's decision); MCL 333.16226(2) (identifying MCL 24.306 as the standard applicable to review decisions by a disciplinary committee). While not necessarily framed in this way by respondent, her lack-of-expert-testimony argument is best considered as a challenge to whether the disciplinary subcommittee's ruling was supported by competent, material, and substantial evidence.[1] Determining whether a decision was supported by competent, material,

---

[1] As will be explained, the ALJ did not exceed its authority or otherwise take an action not authorized by law when it determined that respondent breached the applicable standard of care

and substantial evidence requires the reviewing court to consider "the whole record." *Dep't of Community Health v Anderson*, 299 Mich App 591, 598; 830 NW2d 814 (2013). Evidence is "substantial" if a reasonable person would accept it as sufficient to support the conclusion reached. *Id*. Satisfying this standard requires "more than a scintilla of evidence, but less than a preponderance of the evidence may be enough." *Id*.

## III. ANALYSIS

This case arose after the Bureau sought to have the disciplinary subcommittee sanction respondent for certain violations of MCL 333.16221. As relevant to the Bureau's case against respondent, MCL 333.16221 permits the disciplinary subcommittee to sanction a respondent if the disciplinary subcommittee finds that any of the following grounds exist:

> (a) Except as otherwise specifically provided in this section, a violation of general duty, consisting of negligence or failure to exercise due care, *including negligent delegation to or supervision of employees* or other individuals, whether or not injury results, or any conduct, practice, or condition that impairs, or may impair, the ability to safely and skillfully engage in the practice of the health profession.

> (b) Personal disqualifications, consisting of 1 or more of the following:

> (*i*) Incompetence.

> * * *

> (h) A violation, or aiding or abetting in a violation, of this article or of a rule promulgated under this article. [MCL 333.16221 (emphasis added).]

This case concerns respondent's delegation of a task to Mata. Veterinarians are permitted by statute to delegate tasks to qualified individuals who have the education, training, and experience necessary to perform the delegated task, see MCL 333.16215(1), and there is no dispute that Mata was qualified to perform the task that respondent delegated to her. The crux of the Bureau's case at issue in this appeal is whether respondent negligently supervised Mata in Mata's performance of the delegated task—Macy's teeth cleaning.[2]

---

absent expert testimony to that effect. And while we agree with respondent that such testimony was needed in this case, the lack of expert testimony relates to whether the ultimate conclusion that respondent breached the standard of care was supported by the record evidence. That is, any error of law that the ALJ may have made by determining whether respondent breached the standard of care without the aid of expert testimony would not, standing alone, be grounds for reversal.

[2] If respondent did negligently supervise Macy's teeth cleaning, then she plainly violated MCL 333.16221(a). "Incompetence" under the Public Health Code is defined as "a departure from, or failure to conform to, minimal standards of acceptable and prevailing practice for a health

The Public Health Code defines "supervision" as

the overseeing of or participation in the work of another individual by a health professional licensed under this article in circumstances where at least all of the following conditions exist:

(a) The continuous availability of direct communication in person or by radio, telephone, or telecommunication between the supervised individual and a licensed health professional.

(b) The availability of a licensed health professional on a regularly scheduled basis to review the practice of the supervised individual, to provide consultation to the supervised individual, to review records, and to further educate the supervised individual in the performance of the individual's functions.

(c) The provision by the licensed supervising health professional of predetermined procedures and drug protocol. [MCL 333.16109(2).]

As pertinent to this case, " 'Supervision' includes that degree of close physical proximity necessary for the supervising veterinarian to observe and monitor the performance of a veterinary technician." MCL 333.18802(4). Mich Admin Code, R 338.4911 further provides what steps a veterinarian must take before delegating a task or function to a qualified individual, and the extent to which a veterinarian must oversee a delegated task or function, providing:

(1) Except as limited by section 16215(1) of the code, MCL 333.16215,[3] a veterinarian may delegate the performance of an act, task, or function that falls within the practice of veterinary medicine to an individual who is otherwise qualified to perform the act, task, or function.

(2) Before delegating an act, task, or function that falls within the practice of veterinary medicine, the veterinarian shall first examine the animal patient on which the delegated act, task, or function is to be performed and determine the appropriate treatment for the animal patient.

(3) The delegating veterinarian shall observe, monitor, and supervise the delegatee's performance to the extent necessary to ensure that the delegatee's performance is within the scope of the delegation given and being performed with the skill expected by the delegating veterinarian.

---

profession," so, if respondent was negligent in supervising Macy's teeth cleaning, she would have also violated MCL 333.16221(b)(*i*). And if respondent violated either MCL 333.16221(a) or MCL 333.16221(b)(*i*), she would have violated MCL 333.16221(h).

[3] The limitations on delegated acts, tasks, or functions in MCL 333.16215 are not applicable to this case.

One of respondent's experts, Dr. Timothy Burg, testified that it does not breach the standard of care for veterinarians to leave the site of a procedure after delegating the procedure to a qualified individual if the veterinarian first transfers supervision of the procedure to another veterinarian. The ALJ accepted this as "a reasonable interpretation of" Mich Admin Code, R 338.4911[4] but found that respondent had not transferred supervision of the procedure to another veterinarian before leaving the clinic because respondent left the clinic without saying anything to the other veterinarians at the clinic. The ALJ explained:

> A handoff of supervision from one provider to the next involves a communication between the providers and an agreement by the new provider to assume care of the patient. Communications and agreements are not automatic. They are intentional. As she left the clinic[,] Dr. Grettenberger did not speak to [either of the clinic's other veterinarians] or extract a promise from either of her colleagues to monitor the tooth cleaning procedure.

No admissible expert testimony supported this conclusion, and both of respondent's experts actually testified that an explicit agreement between respondent and one of the other veterinarians at the clinic was *not* necessary to hand off supervision of Macy's teeth cleaning to one of the other veterinarians at the clinic under the circumstances. Each of respondent's experts testified that, in a small clinic setting like the one at issue in this case, when a veterinarian left the clinic after delegating a task to a qualified individual, handing off supervision of that task was "de facto" or "seamless." The experts explained that, by this, they meant that when a veterinarian left the clinic after delegating a task that required supervision, the other veterinarians still at the clinic would understand and implicitly accept that they were responsible for supervising and monitoring the delegated task without any communication between them and the veterinarian who left.

Clearly, the ALJ disagreed with respondent's experts as to whether respondent's at-issue conduct—leaving the clinic after delegating Macy's teeth cleaning to Mata without first confirming with one of the other veterinarians still at the clinic that they would supervise the cleaning—amounted to a breach of the applicable standard of care. And the ALJ made this determination without the aid of expert testimony. While unusual, this was not necessarily improper. It is true that, in general, expert testimony is required in a professional-malpractice case to determine both the applicable standard of care and whether that standard of care was breached. See *In re Jankowksi*, 507 Mich 1013, 1013 (2021). But there exists an exception to this rule "when the lack of professional care is so manifest that it would be within the common knowledge and experience of the ordinary layman that the conduct was careless and not conformable to the standards of professional practice and care employed in the community." *Id*. (quotation marks and citation omitted). See also *Sillery v Bd of Med*, 145 Mich App 681, 688-689; 378 NW2d 570 (1985).

---

[4] This conclusion is not challenged on appeal. So, for purposes of this appeal, we accept the ALJ's conclusion that a veterinarian can delegate a procedure to a qualified individual and then transfer supervision of the procedure to another veterinarian and leave the site without violating the standard of care for veterinarians.

Respondent contends on appeal that the ALJ erred by not relying on expert testimony to determine the standard of care and whether respondent breached that standard, and the Bureau responds that no such testimony was required under the exception discussed above. We thus must determine whether respondent's conduct of delegating Macy's teeth cleaning to Mata and then leaving the clinic without first receiving a confirmation from one of the other veterinarians at the clinic that they would supervise the cleaning was conduct so careless or reckless that it would be within the common knowledge and experience of the ordinary layman that the conduct constituted a failure to exercise due care.

We conclude that respondent's at-issue conduct was not so careless or reckless that an ordinary layman would understand that it constituted a failure to exercise due care. The ALJ adopted a bright-line rule—any time one veterinarian hands off supervision of a delegated task to another veterinarian, there must be some communication between the two veterinarians in which the second veterinarian agrees to take over supervision of the delegated task from the first veterinarian. While this very well may be the standard of care applicable to veterinarians, we are not prepared to say that it is within the common knowledge and experience of the ordinary layman to know that. This is so because, frankly, we do not think that it is common knowledge among laymen that a veterinarian can never implicitly hand off supervision of a delegated task to another veterinarian (which is the standard of care as found by the ALJ[5]). In fact, assuming that a layman knows that a veterinarian can delegate a task to a qualified individual and will then be responsible for supervising the delegated task, we question whether a layman would know that a veterinarian can relieve themselves of their supervising responsibility by transferring that responsibility to another veterinarian. Indeed, the ALJ itself relied on expert testimony to conclude that such a transfer of supervision was within the standard of care for veterinarians. But it then concluded, without the aid of expert testimony, that the manner in which respondent transferred her supervising responsibility of Mata breached the standard of care for veterinarians. This was error.

To summarize, we conclude that this was a typical professional-malpractice case in which expert testimony was required "to establish the applicable standard of care and to demonstrate that the [respondent] breached that standard." *In re Jankowksi*, 507 Mich at 1013 (quotation marks and citation omitted). It follows that, because the ALJ's determination of the applicable standard of care and its conclusion that respondent breached that standard were not supported by expert testimony, those findings were not supported by competent, material, and substantial evidence.[6]

---

[5] Respondent argued in her closing brief to the ALJ that she did not fail to properly supervise Mata during Macy's teeth cleaning because, among other reasons, she implicitly transferred her supervising responsibility to the other veterinarians at the clinic. The ALJ never made a finding one way or the other as to whether respondent implicitly handed off her supervising responsibility; instead, the ALJ ruled that a handoff of supervision could never be implicit.

[6] To be clear, we are not absolving respondent of wrongdoing, nor do we conclude that respondent's conduct satisfied the standard of care applicable to the practice of veterinary medicine. We are merely holding that the finding that respondent's conduct fell short of the applicable standard of care was not supported by competent, material, and substantial evidence

The Bureau makes a series of arguments against this result and in support of the disciplinary subcommittee's rulings, none of which have merit. First, the Bureau argues that respondent violated "the letter of the law" because she "failed to observe Ms. Mata during the delegated procedure." But the ALJ—and by extension, the disciplinary subcommittee—did not find that the delegated task was not properly observed; the ALJ found that respondent failed to use due care in her supervision of the delegated task because she failed to properly hand off that supervision to one of the other veterinarians present at the clinic before leaving.

Second, and along the same lines, the Bureau contends that there can be no dispute that respondent did not supervise Mata when Mata cleaned Macy's teeth, but this argument has the same flaws as the Bureau's first argument. The ALJ did not find that the delegated task was not supervised—the ALJ instead found that respondent breached the standard of care applicable to veterinarians when delegating tasks by not properly handing off supervision of Macy's teeth cleaning to one of the clinic's other veterinarians because respondent left the clinic after authorizing Macy's teeth cleaning without first confirming that one of the clinic's other veterinarians would supervise the cleaning.

Lastly, the Bureau argues that "even if expert testimony were required to establish [that respondent] violated sections 16221(a) and (b)(i) of the Code, it was not required to establish that she violated MCL 333.16221(h)." This argument lacks merit because respondent could not have violated MCL 333.16221(h) alone. By its terms, MCL 333.16221(h) requires an underlying violation—either by the respondent or by someone that the respondent aided or abetted—of Article 15 of the Public Health Code or a rule promulgated under Article 15 of the Public Health Code. MCL 333.16221(h). For the reasons explained, there was not competent, material, and substantial evidence to support the ALJ's finding that respondent violated MCL 333.16221(a), MCL 333.16221(b)(*i*), or Mich Admin Code, R 338.4911, so there was no underlying violation to support the ALJ's finding that respondent violated MCL 333.16221(h).

Accordingly, the portion of the order at issue on appeal finding respondent responsible for violating the Public Health Code is reversed, and the case is remanded for entry of dismissal of the complaint. We do not retain jurisdiction.

/s/ Brock A. Swartzle
/s/ Colleen A. O'Brien
/s/ Mariam S. Bazzi

---

because expert testimony was needed to establish the applicable standard of care and to demonstrate that respondent's conduct breached that standard, and no such admissible testimony was presented.